PALMER et al. v. JORDAN MACH. CO.

(Circuit Court of Appeals, Second Circuit. November 13, 1911.)

No. 67.

PATENTS (§ 328*)—INFRINGEMENT—APPARATUS FOR INVERTING TUBULAR FAB-
RICS.

The Palmer patent, No. 878,995, for an apparatus for inverting tubular fabrics, claim 1, which covers broadly a combination with a horizontal tube, upon which the fabric is drawn, to be inverted or turned the other side out when it is removed, of "a pair of feed rolls adapted to engage the opposite sides of said tube, and yielding means for forcing said feed rolls against said tube," is infringed by the apparatus of the Jordan patent, No. 960,227, which differs from that of the Palmer patent only in the "yielding means" for forcing the feed rolls against the tube, which are equivalent within the broad language of the claim. Claims 7 and 8, which are more specific, as limited by their terms, *held* not infringed.

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit in equity by William B. Palmer and Jesse V. Palmer against the Jordan Machine Company for infringement of letters patent No. 878,995, for apparatus for inverting tubular fabrics, issued to William B. Palmer February 11, 1908. Decree for defendant (186 Fed. 496), and complainants appeal. Reversed.

Walter D. Edmonds (Edmonds & Peck, on the brief), for appellants.
Walter E. Ward, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The judge of the Circuit Court has carefully described the objects sought to be attained by the Palmer patent in suit and the means for attaining them. It will serve no useful purpose to reiterate what he has said in this regard. Should anyone, besides the parties to this litigation, be interested in its previous history, he will find all the issues fully set out and discussed in the opinion below. The controversy, which involved eight claims in the Circuit Court, is now reduced to three—the first, seventh and eighth. We do not deem it necessary to consider at length the infringement based upon the sale of four machines of the so-called "Utica type." These machines concededly infringed, but were not sold by the defendant, the Jordan Machine Company, but by Cornelius Jordan, as an individual, before December 21, 1908, when the company was incorporated. The judge so found and we are not persuaded that his conclusion in this regard is incorrect. Indeed, in view of the fact

that only four machines are involved, which were subsequently pur-
chased by the complainant, and in view of the conclusion which we
have reached as to the infringement of the first claim, the question
regarding these four machines may almost be considered as a case of
de minimis.

The same is true of the other machines which were not sold as the
defendant insist  and as the court has found, by the defendant cor-
poration.  It would leave the principal controversy undetermined were
the court to find for the complainants based upon a sale of one of
the machines made by Jordan at the outset, which concededly infringe
the Palmer patent.  The vital question is whether the patent is in-
fringed by the machines made by the defendant under the Jordan
patent, No. 960,227, granted May 31, 1910.

The defendant's brief contains the following statement:

"Palmer Bros., with all their capital and advertising and prestige, have
only sold twenty-five machines and have not sold any since the improved
Jordan machines have been upon the market."

It is obvious, therefore, that a finding of infringement based upon
a sale of the machines made by Jordan, which are admitted to
infringe, would settle no existing issue, except costs and a small claim
for damages.  The parties are entitled to our judgment upon the vital
question at issue.

The specification states:

"In the manufacture of knit goods, the fabric is commonly knitted in the
form of a tube upon circular machines, in many cases with the rough or un-
finished side of the fabric outermost.  In such cases, and in other cases where
the subsequent treatment of the fabric demands such a course, it is custom-
ary before cutting the garment from the web to invert or turn inside out the
tubular web which is frequently many yards in length.  The inversion of
the tubular web is accomplished by drawing one end of the web out through
the other end preparatory to which the web is slid upon a metal tube.  After
the whole web has been thus slid upon the metal tube, one end of the web
is inserted in the neighboring end of the tube and drawn therethrough and
out from the other end.  My invention relates more particularly to an im-
proved means for depositing the web of fabric upon the tube, preparatory
to inversion of the web.  The principal objects of the invention are to facil-
itate the depositing of the tube of fabric upon the supporting tube prepara-
tory to inversion and to prevent injury to the fabric while thus being placed
upon the supporting tube."

The claims in controversy are as follows:

"1. In an apparatus of the class described, the combination with the fabric
supporting tube; of a pair of feed rolls adapted to engage the opposite sides
of said tube; and yielding means for forcing said feed rolls against said
tube."

"7. An apparatus of the class described comprising a fabric supporting
tube, a pair of swinging frames, means for normally drawing said frames
towards each other, an upright shaft carried by each of the frames, a feed
roll connected with each of the shafts, said feed rolls positioned one at a
time at each side of the tube, and means for operating the shafts.

"8. An apparatus of the class described comprising a fabric supporting
tube, a pair of swinging frames, means for normally drawing said frames
towards each other, an upright shaft carried by each of the frames, a feed
roll connected with each of the shafts, said feed rolls positioned one at each
side of the tube, means for operating the shafts, and means or maintaining
said rolls out of engagement with said tube."

Of these, the first claim is the broadest and includes a combination having the following elements in an apparatus for inverting tubular fabrics:

First.—A fabric supporting tube;

Second.—A pair of feed rolls adapted to engage the opposite sides of said tube;

Third.—Yielding means for forcing said feed rolls against said tube.

Claim 7 contains the following elements in the aforesaid apparatus:

First.—A fabric supporting tube;

Second.—A pair of swinging frames;

Third.—Means for normally drawing the said frames towards each other;

Fourth.—An upright shaft carried by each of the frames;

Fifth.—A feed roll connected with each of the shafts, the rolls being positioned one at each side of the tube;

Sixth.—Means for operating the shafts.

Claim 8 adds to the elements of claim 7 an additional element, viz., means for maintaining said rolls out of engagement with said tube.

The validity of the patent is conceded by the defendant, its contention being that the claims must be limited in view of the patent to Charles W. Gove, No. 769,648, and, as so limited, are not infringed by the machines manufactured by the defendant.

The entire controversy hinges, therefore, upon what construction shall be given to the complainant's claims in issue, which are admitted to be valid. Whether they shall be construed broadly or narrowly depends upon the prior art and, in this respect, the case is exceptionally clear and simple. Palmer was not a pioneer, because Gove had conceived the broad idea before him, but the case is unusual in having a prior art consisting of a single patent.

Another patent to Dreman for a fabric twisting machine appears in the record, but it is not necessary to discuss it because the defendant bases his argument that the Palmer claims must be limited in scope upon the Gove patent alone.

The defendant insists that the "yielding" element precisely as described by Palmer, must be found in its machines, and if not so found, infringement is avoided. Gove had the broad idea, but his means for accomplishing the desired end were too complicated to be commercially successful.

In Gove's machine the fabric is stretched upon a spreader and is then pulled in between the feed rolls which feed it forward over the spreader and onto the tube. The rolls cannot be placed, as in the Palmer machine, at any point along the tube, the interior of which is free from any obstruction to the passage of the fabric, whereas, in Gove, it is obstructed by the spreader support. Gove does not have the resilient pressure of the spring controlled rolls of Palmer.

Gove's machine cannot be operated by an inexperienced person, it requires greater care at all stages of the process and is more apt to injure the fabric than is the Palmer machine. In short, giving to Gove

all the credit to which he is fairly entitled, there was yet room in the art for the Palmer invention with a fair range of equivalents. The first claim, as we have seen, is not limited to the precise method shown and described for forcing the feed rolls against the tube. It is not limited to a coiled spring located between the arms, any spring wherever located which produces this result is within the language of the claim. The claim is not even limited to a spring, any "means" which will produce the result, such as the elastic properties of India rubber, for instance, are clearly within its terms. What the inventor was seeking to protect was his method of advancing the fabric by rolls which pressed against it by yielding pressure, whether that pressure was produced inside or outside of the rolls by a spring or its equivalent.

The only important difference between the machine of the patent and that of the defendant is that the latter does not have a yielding frame after his rolls are brought into contact with the fabric. At that point the frame becomes rigid, but the yielding feature is transferred from the frame of the patent with its coiled spring and toggle joint to the rolls themselves and to the surface of the rolls which contacts with the fabric of the tube.

The Jordan patent contains the following:

"The friction heads or feeding rollers are formed with ends acted upon by a spring, which normally tends to force the same apart, and are connected by strips of flexible material, as, for instance, a good quality of leather, which are laced through suitable openings in the ends, and form a yielding fabric gripping surface. The strips of leather or other material hold the ends from separating to any large extent under the action of the spring, and consequently the spring, by its action, keeps the leather strips taut for properly acting upon the fabric being forced on the tube."

In other words, the defendant's rolls are hollow, at each end of the roll there is a plate and these plates are controlled by a spring which gives elasticity and resiliency to the roll. The plates are connected at their outer periphery by leather interlaced between them so as to present a yielding and springing surface to the fabric. When in operation, substantially the same yielding surface is found in both, but in Palmer's machine the frame yields, while the roll is comparatively rigid, and in the defendant's the frame is rigid and the surface of the rolls yields by the combined action of spring and leather, to produce substantially the same result.

The first claim passed the Patent Office without adverse criticism, and was allowed as applied for. We think it is infringed.

We have reached the conclusion, but with some doubt, that claims 7 and 8 must be limited to the language used and that so limited, they are not infringed.

Each claim contains the limitation "normally drawing said frames towards each other." This language correctly describes the action of the Palmer machine. The coiled spring between the frames operates "normally," that is, when left to itself without aid from other sources. It does not describe the defendant's structure because the rigid double screw-threaded rod "normally" does nothing except to hold the arms

rigidly in position. It moves them only when it is itself moved by the hand of the operator.

The decree is reversed and the cause is remanded to the Circuit Court with instructions to enter a decree in favor of the complainants upon the first claim, but without costs.