PALMER et al. v. JOHN K. STEWART & SONS, Inc.

(District Court, N. D. New York. February 13, 1920.)

No. 259.

Patents ☞328—878,995, claim 1, for apparatus for inverting tubular fabrics, held infringed, resiliency of material being equivalent of spring.

The Palmer patent, No. 878,995, claim 1, for apparatus for inverting tubular fabrics, consisting of a combination with a fabric-supporting tube, of a pair of feed rolls adapted to engage the opposite sides of said tube "and yielding means for forcing said feed rolls against said tube," the yielding means shown being a spring connecting the rolls, allowing them to give to accommodate themselves to irregularities in the fabric, held infringed by a machine having no spring connection between the rolls, but in which the same result was accomplished through the inherent resiliency of the materials of the frame and shafts.

In Equity. Suit by William B. Palmer and Jesse V. Palmer against John K. Stewart & Sons, Incorporated. Decree for complainants.

James L. Norris and C. A. Bateman, both of Washington, D. C., for plaintiffs.

Walter E. Ward, of Albany, N. Y., for defendant.

LEARNED HAND, District Judge. This case comes up on the question of the infringement of the plaintiffs' patent 878,995. Only one claim is at issue. This same claim has been adjudicated twice before in the Second circuit (Palmer v. Jordan Mach. Co. [C. C.] 186 Fed. 496; Id., 192 Fed. 42, 112 C. C. A. 454), and I will state it for the purpose of discussing it here. It is as follows:

"1. In an apparatus of the class described, the combination, with the fabric-supporting tube, of a pair of feed rolls adapted to engage the opposite sides of said tube, and yielding means for forcing said feed rolls against said tube."

These machines are for the purpose of running onto a tube a hollow web of fabric, with speed and without injury. They are extremely simple in design, consisting of nothing but what I may call a stovepipe, horizontally fixed, near the free end of which are two substantially vertical spools, which can be rotated in opposite directions. These spools must have a motion of translation to and from the tube.

The patent is an old one, and has been in litigation twice before. At its outset it was copied by one Jordan, and his imitation is conceded to have been an infringement and was never contested in any court. The first litigation arose over a combination in general appearance the same as that of the disclosure, but differing in the means by which the rollers were made to approach the tube. Palmer had frames, upon which the rollers were mounted, hinged at the bottom, and in order to cause them to approach he put between them a strong spring, which was always in tension and held by a toggle joint from forcing the spools against the tube. When Jordan attempted first to evade the patent, he dispensed with the spring which Palmer had disclosed, and substituted a shaft with a thread forcing the frames together or apart

by the rotation of a wheel. Nevertheless, apparently, he supposed, just as had Palmer, that he must have some yielding means at the rolls, which he accomplished by having the bottom of the rolls movable up and down on the shaft under the tension of a spring, and as the frames were forced against the tube this spring took up the pressure so developed. The Circuit Court of Appeals (Palmer v. Jordan Mach. Co., 192 Fed. 42, 112 C. C. A. 454) decided that the machine was an infringement, whether the element which forced the feed rolls against the tube was itself yielding, or whether it was in the feed rolls themselves.

But if we read literally the last element of the claim, which is now in dispute, Jordan was right. He had in fact no yielding means for forcing his feed rolls against the tube. His means were positively driven by the rotation of a wheel. Having been defeated upon that device, Jordan tried again, and I think in that effort clearly demonstrated that he had recourse to the only prior patent in the art; i. e., Gove's. Now, Gove had two rollers unyieldingly mounted in a frame; but Gove apparently also thought that he needed a yielding contact between the fixed rollers and other rollers, which were to carry off the web onto the tube, and such rollers he disclosed as $d^2$–$d^3$. They were mounted substantially on the tube, but so as to have a yielding contact by springs with the larger rollers $F$ and $G$.

It is quite clear that in Jordan's second infringement (which I suppose he thought would escape on account of its being so nearly copied after the prior art), the feed rollers were forced against the tube by precisely similar mechanism that is now used, but when they got up to the tube they encountered a yielding means, consisting of what I think it fair to call the surface of the tube itself, because I regard the small rollers which Jordan inserted in the tube as equivalent to the surface. This is particularly shown in Gove's own invention, because in his illustrative disclosure, shown in Fig. 4, he shows the sides of the tube as acting like springs. In other words he made a certain portion of his tube resilient, and allowed it to accommodate itself to differences in pressure. The decision of the Circuit Court of Appeals on this second Jordan infringement may be, therefore, with entire justice, held to be this: That if you find in any co-operating parts of the two opposing factors elements which will yield to allow for irregularities of the fabric as it passes over the point of contact, you have got the invention in suit. It is therefore quite clear that the courts have refused to take literally the last element of the claim in any sense whatever.

Now, taking this as law for this patent, the question here is whether this defendant has escaped? As I said, his means of making the rollers approach is precisely like both the earlier machines held to be infringements. But in this case he found he could altogether dispose of any spring-opposing elements whose compression establishes a pressure which carries the web forward. That being so, what shall we say of the meaning of the phrase "yielding means"? "Yielding means," taken in a practical sense, is a means which yields, and in this case any means yields which will give sufficiently to accommodate the machine to ir-

regularities in the fabric. The test is entirely what the machine will do when you operate it, and there is undisputed proof in this case that the rollers in contact with the tube, as actually used, will yield. They yield to fabric, because the plaintiff has put through fabric of varying thicknesses, and they accommodated themselves to them. Indeed, they yield to solid material, like rubber, wood, or leather, if that be important. This they do only by the inherent resiliency of the materials of the frame and shafts.

It so happens that there is a decision in the Circuit Court of Appeals, which Mr. Norris has called to my attention, and which is very unusually in point—in point in a sense I had hardly expected two patent cases could ever be in point. Manton-Goulin Mfg. Co. v. Dairy Machinery & Construction Company, 247 Fed. 317, 159 C. C. A. 411. In that case the patent had disclosed a pressure device, which operated by a very heavy spring pushing a plunger into an orifice, and under the enormous pressure which the machine established the spring was overcome. The defendant attempted to evade infringement by a machine which had no spring whatever, but a very strong steel plug, which could be screwed down with enormous pressure on some steel discs. Under the pressures which the machine set up, this shaft was elongated and acted as a spring. It was very strenuously argued in that case that there was no spring pressure, but the court said no; that there was spring pressure wherever there was resiliency in the material sufficient in practice to accomplish the same result as a spring, and so the defendant was held guilty of an infringement.

Now, I can see really no distinction between that case and this. The presence of the equivalent of a spring in this machine depends on whether the inherent resiliency of its materials operates as the spring disclosed operates. I think it does.

A decree for plaintiffs for an injunction, with costs, and an accounting will be entered.